**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES BUMPUS,

Plaintiff,

- v -                                          Civ. No. 9:02-CV-955
                                                      (TJM/RFT)

DEBRA ADAMS, Register Nurse #2, and SUSAN A.
WASH,[1] Register Nurse #2,

Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

JAMES BUMPUS
Plaintiff, *Pro Se*
86-A-9564
Wende Correctional Facility
Wende Road
P.O. Box 1187
Alden, NY 14044

HON. ELIOT SPITZER                           KELLY L. MUNKWITZ, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

  *Pro se* Plaintiff James Bumpus brings a civil action pursuant to 42 U.S.C. § 1983, alleging

Defendants were deliberately indifferent to his medical needs in violation of the Eighth

Amendment.  Dkt. No. 1, Compl. at ¶¶ 27-29.  Defendants Debra Adams, Registered Nurse at

Upstate Correctional Facility ("Upstate"), and Susan A. Walsh, Registered Nurse at Upstate, bring

---

[1] Plaintiff mistakenly spells Defendant Walsh's name as "Wash."  *See* Dkt. No. 56, Susan W. Walsh Aff.  The
Court will refer to this Defendant by the proper spelling.

this Motion for Summary Judgment.  Dkt. No. 56.  Plaintiff has failed to respond to the Motion.  For the reasons to follow, it is recommended that the Motion for Summary Judgment be **granted**.

## I.  FACTS[2]

Plaintiff was incarcerated at Upstate at the time the alleged incidents in question occurred.  Dkt. No. 56, Defs.' 7.1 Statement at ¶ 2.  Beginning in January 2002 until September 2002, Plaintiff was seen by medical staff at Upstate on various occasions.  *Id.* at ¶ 5.[3]  Prior to January 2002, Plaintiff was diagnosed with moderate gastroesophageal reflux disease and hypertension.  *Id.* at ¶ 15.

In January 2002, Plaintiff was evaluated and/or examined approximately thirty-four (34) times by medical staff for a myriad of complaints involving stomach and chest pains.  Dkt. No. 56, Kelly L. Munkwitz Affirm., Ex. A, Medical Records at pp. 316-17, 324-25, 329, 331, 333-37, 347-49, & 351.  In particular, Plaintiff was seen by Defendant Walsh on January 1, 2, 5, 9, 10, 11, 16, 17, 18,19, 22, 23, 28, 29, and 30, 2002, sometimes multiple times in one day, and by Defendant Adams on January 3, 7, 12, 13, 15, 18, 25, 26, and 31, 2002.[4]  *Id.*, Ex. A, Medical Records at pp.

---

[2] Plaintiff failed to respond to the Motion for Summary Judgment.  Pursuant to the Local Rules for the Northern District of New York ("Local Rules"),

> "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."

N.D.N.Y.L.R. 7.1(b)(3).
Furthermore, since Plaintiff did not file a Statement of Material facts as required by the Local Rules, Defendants' Statement of Material Facts are deemed admitted.  N.D.N.Y.L.R. 7.1(a)(3).

[3] Although Defendants' 7.1 Statement refers to January 2001, the relevant time periods for the events alleged in the Complaint are for the year 2002.  *See* Compl.

[4] Plaintiff was also seen by other medical staff in January 2002 for ailments and treatments similar to those administered by Defendants Walsh and Adams.  Dkt. No. 56, Kelly L. Munkwitz Affirm., Ex. A, Medical Records at pp. 324 & 349.

316-17, 324-25, 329, 331, 333-37, 347-48, & 351. During this time period, both Walsh and Adams provided Plaintiff with numerous medications and refills all while constantly checking Plaintiff's vitals. *Id.*, Ex. A, Medical Records at pp. 316-17, 324-25, 329, 331, 333-37, 347-48, & 351. During this same month, aside from Plaintiff's encounters with both Defendants, Plaintiff further submitted eleven (11) sick call requests to see a doctor for chest and stomach pains and to receive refills on prescriptions. *Id.*, Ex. A, Medical Records at pp. 318, 332, & 338-346. The doctor was informed of Plaintiff's complaints and reviewed his chart on many occasions, but felt it was unnecessary for him to see Plaintiff and instead recommended that Plaintiff continue to take the medications prescribed. Defs.' 7.1 Statement at ¶¶ 18 & 19; Munkwitz Affirm., Ex. A, Medical Records at pp. 319, 329, 333-36 & 347.

In February 2002, Plaintiff was seen by medical staff, including Walsh and Adams, nearly thirty (30) times, whereby Plaintiff again received numerous medications or refills and had his vitals regularly checked. Munkwitz Affirm., Ex. A, Medical Records at pp. 281, 284-87, 289, 294, 297, 300, 306, 311 & 316. Specifically, on February 2, 2002, Plaintiff was taken to the Alice Hyde Medical Center where he received treatment and medications for his coughing and dizziness. *Id.*, Ex. A, Medical Records at pp. 307-11, & 316. On February 4, 2002, Plaintiff was scheduled for a "CT and echo" of his kidneys. *Id.*, Ex. A, Medical Records at p. 311. On February 5, 2002, it was noted by the medical staff at the facility that Plaintiff refused to have a renal MRI though Plaintiff had complained about his renal arteries. *Id.*, Ex. A, Medical Records at p. 306. Then on February 7, 2002, Plaintiff had a renal MRI and the results were provided by the Alice Hyde Medical Center on February 8, 2002. *Id.*, Ex. A, Medical Records at pp. 301-04 & 306.

Furthermore, on February 10, 2002, Walsh monitored Plaintiff's blood pressure during the

day. *Id.*, Ex. A, Medical Records at p. 297.  Then on February 13, 2002, Adams noted that Plaintiff wanted to see the doctor and that Plaintiff was scheduled to see the doctor next week.  *Id.*, Ex. A, Medical Records at p. 294.  Plaintiff's next medical visit was with Walsh on February 16, 2002, when Nurse Walsh checked Plaintiff's blood pressure and refilled his medication, though Plaintiff was argumentative the whole time.  *Id.*, Ex. A, Medical Records at pp. 287 & 289.  After that, on February 19, 2002, Plaintiff was evaluated by a doctor due to his prior hospitalization for hypertension.  *Id.*, Ex. A, Medical Records at p. 287.  The doctor prescribed medication.  *Id.* Subsequently, on February 15 and 22, 2002, Plaintiff complained of chest pressure but refused to be admitted to the infirmary on both occasions.  *Id.*, Ex. A, Medical Records at pp. 285, 288, & 294. Then on February 22, 2002, Plaintiff was seen by Walsh for a facial rash and was seen the next day by Adams for the same ailment and received medication.  *Id.*, Ex. A, Medical Records at pp. 285 & 284.  Plaintiff was provided with medication refills by Walsh and Adams on February 23 and 25, respectively.  *Id.*, Ex. A, Medical Records at p. 281.  In addition, during this month, Plaintiff did not submit any sick call requests to see the doctor.[5]  Defs.' 7.1 Statement at ¶ 9; Munkwitz Affirm., Ex. A, Medical Records at pp. 281-316.

In March 2002, Plaintiff was again seen on numerous occasions by medical staff, including Walsh and Adams, and received medication refills while being monitored for all of his registered complaints.  Munkwitz Affirm., Ex. A, Medical Records at pp. 189-93, 195-99, 202, 212-13, 223, 228, 230, 239-41, 274-75, 277, & 280.  Particularly, on March 6, 2002, Plaintiff complained of

---

[5] Plaintiff asserts he submitted sick call requests from February 9-23, 2002, to see a doctor for his chest and stomach pain and refers to "Exhibit B" to his Complaint. Compl. at ¶ 9.  However, there were no exhibits attached to Plaintiff's Complaint nor were there any sick call requests for February found within the medical records submitted by Defendants.  Munkwitz Affirm., Ex. A, Medical Records at pp. 281-316.

chest pains and was taken to the infirmary.  *Id.*, Ex. A, Medical Records at p. 277.  The doctors were

consulted and Plaintiff was transferred to the Alice Hyde Medical Center where he received

medications and was discharged two days later.  *Id.*, Ex. A, Medical Records at pp. 266-75.  When

Plaintiff returned to the facility on March 8, 2002, he was taken to the infirmary and then released

the next day.  *Id.*, Ex. A, Medical Records at p. 241.  Then on March 10, 2002, Plaintiff was to

receive medication but instead he refused his medication and did not sign the refusal form.  *Id.*, Ex.

A, Medical Records at pp. 238 & 240.  On March 11, 2002, Plaintiff asked Nurse Walsh to see the

doctor but on March 12, 2002, the doctor reviewed Plaintiff's chart and directed that medication

should be given.  *Id.*, Ex. A, Medical Records at pp. 239 & 240.  On March 18, 2002, Plaintiff was

seen by a nephrology specialist and was subsequently taken to the infirmary.  *Id.*, Ex. A, Medical

Records at pp. 223, 225, 228, & 229.  Once again, on March 22, 2002, Plaintiff was given his

medications but refused to take them unless he was seen by a doctor.  *Id.*, Ex. A, Medical Records at

p. 213.  Then on March 23, 2002, Plaintiff became disruptive when Walsh tried to give him his

noon medication.  *Id.*, Ex. A, Medical Records at p. 212.  The same day, Plaintiff complained of

chest pain but refused to take the medication and he did not sign the refusal form once again.  *Id.*,

Ex. A, Medical Records at pp. 200 & 202.  Despite his complaints, the doctor stated Plaintiff could

return to his block.  *Id.*, Ex. A, Medical Records at p. 202.

Subsequently, on March 25, 2002, Plaintiff told Walsh that he wanted a doctor to explain the

reason for his high blood pressure so Walsh left the chart for the doctor's review.  *Id.*, Ex. A,

Medical Records at p. 198.  The next day, Adams noted that Plaintiff wished to see a doctor for his

kidney pain and that he was scheduled to see a nephrology specialist.  *Id.*, Ex. A, Medical Records

at p. 197.  Plaintiff was seen that day by a nephrology specialist but nevertheless decided to throw

his medications down the sink and toilet some time after the appointment.  *Id.*  He also refused to

get his blood pressure taken but did not sign the refusal form.  *Id.*  The doctor then examined

Plaintiff's chart on March 27, 2002.  *Id.*, Ex. A, Medical Records at p. 194.

On March 29, 2002, Plaintiff complained of congestion and wanted to see the doctor but

refused to go to the infirmary.  *Id.*, Ex. A, Medical Records at p. 192.  The same day, not only did a

nurse speak to Plaintiff about his hypertension and cardiac risk, but the doctor was also told of

Plaintiff's condition and stated that Plaintiff should contact the nephrology specialist if he was

having problems with his medications.  *Id.*, Ex. A, Medical Records at p. 192.  Plaintiff further

refused some of his medications that day.  *Id.*, Ex. A, Medical Records at p. 190.  Then on March

30, 2002, Walsh attempted to give Plaintiff his morning and noon medications but Plaintiff refused

even though he was told of the dangers and did not sign the refusal form.  Defs.' 7.1 Statement at ¶¶

21 & 22; Munkwitz Affirm., Ex. A, Medical Records at pp. 190 & 191.  Plaintiff again refused his

medications on March 31, 2002.  Munkwitz Affirm., Ex. A, Medical Records at p. 189.

During the month of March, Plaintiff also filed two grievances regarding his medical care.

On March 25, 2002, Plaintiff filed a grievance, numbered UST-11618-02, requesting to see a doctor

for his medical conditions alleging that he was not seen by a doctor after returning from an outside

hospital stay on March 19, 2002.  *Id.*, Ex. D, Defs.' Dep. Ex. D, Grievance, dated Mar. 25, 2002, &

Tousignant Mem., dated Apr. 3, 2002.  The Inmate Grievance Resolution Committee ("IGRC")

responded to the grievance on April 16, 2002, and found that Plaintiff: 1) was referred to a doctor

for his "acute renal failure;" 2) was again seen by the same doctor on March 27, 2002; 3) was seen

on March 29, 2002, by a nurse practitioner who spoke to Plaintiff at length about his medical

conditions; and 4) was seen on March 31, 2002, by another doctor who wrote new lab and medical

orders.  *Id.*, Ex. D, Defs.' Dep. Ex. D, IGRC Review, dated Apr. 16, 2002.  Then on March 30, 2002, Plaintiff filed a grievance stating Walsh denied him medication on that same date in that Walsh allegedly went to Plaintiff's cell before noon to provide Plaintiff with the medication but learned that Plaintiff was in the shower.[6]  *Id.*, Ex. D, Defs.' Dep. Ex. B, Grievance, dated Mar. 30, 2002.  Therefore, Walsh allegedly left without Plaintiff receiving his medication.  *Id.*  The IGRC responded on April 17, 2002, and stated that on March 30, 2002, Plaintiff was offered his medication but refused it.  *Id.*, Ex. D, Defs.' Dep. Ex. B, IGRC Review, dated Apr. 17, 2002.  The IGRC also noted the issue was well documented in Plaintiff's medical records.  *Id.*

From April to September 2002, Plaintiff was seen by medical staff, again including Defendants Walsh and Adams, on countless occasions who treated Bumpus for his complaints about chest and kidney pain.  *Id.*, Ex. A, Medical Records at pp. 21-23, 25, 27, 30, 33, 35, 39, 41-44, 46, 50-52, 56, 59, 67-69, 72, 74-76, 78, 79, & 181-85.  During this time period, Plaintiff had several lab work-ups, outside consultations, hospital visits, as well as reviews by facility doctors, new diet orders, ultrasounds, and numerous refills on medications.  *Id.*, Ex. A, Medical Records at pp. 21, 22, 25, 27, 31, 35, 39, 44, 50-51, 59, 62-65, 68, 78, 80, 81, 90-91, 95-96, 98-104, 106, 109, 118-20, 122-35, 138-41, 144, 146-47, 150-57, 159-77, 179-80, 181-83, & 184-85.  However, Plaintiff also refused not only to take his medications on numerous occasions, but further refused other forms of treatment and testing.  *Id.*, Ex. A, Medical Records at pp. 39, 50, 56, 66, 68-69, 71-73, 76-78, 81-82, 94, 97, 105, 107-08, & 148-49.[7]  Most notably, on September 3, 2002, the doctor read Plaintiff's

---

[6] Plaintiff asked that his medication be delivered at precisely noon and no earlier.  Munkwitz Affirm., Ex. D, Defs.' Dep. Ex. B, Grievance, dated Mar. 30, 2002.

[7] Plaintiff also submitted sick call requests from April 2002 to August 2002 and virtually every day in the month of September 2002.  Munkwitz Affirm., Ex. A, Medical Records at pp. 3-20, 24, 26, 28-29, 32, 34, 36-38, 45,47-49, 53-55, 57-58, & 60-61.

chart and stated to him that he was "sorry that [he] won't see [Plaintiff] but, [Plaintiff's] medical problem is that [he is] <u>non</u> complaint with the standard of care [of] medical treatment, so how can [the doctor] help . . . if [Plaintiff] will not take meds appropriately." *Id.*, Ex. A, Medical Records at p. 21 (emphasis in original).  The doctor went on to state that Plaintiff's blood pressure was under control and that the current medical treatment should be continued. *Id.*[8]

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials"

---

[8] In addition to all dates stated for January 2002 to September 2002, Plaintiff may have been seen by a doctor on more occasions but it is difficult to discern exactly when the doctor treated and/or evaluated Plaintiff as some of the signatures in the ambulatory health record entries are not clear.

of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344
F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to
defeat a motion for summary judgment when the moving party has set out a documentary case.");
*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn
statements are "more than mere conclusory allegations subject to disregard . . . they are specific and
detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in
deciding a summary judgment motion" and the credibility of such statements is better left to a trier
of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.
1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities
and draw all reasonable inferences in favor of the nonmoving party.  *Nora Beverages, Inc. v. Perrier
Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary
judgment motion stage of the litigation is carefully limited to discerning whether there are any
genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this
point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential
Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.  Exhaustion of Remedies

Defendant Adams claims that Plaintiff failed to exhaust his administrative remedies as to
one grievance that does not have a stamp of receipt from the Inmate Grievance Procedure ("IGP")
Office and is dated March 26, 2002.  Dkt. No. 56, Def.'s Mem. of Law at p. 8; Munkwitz Affirm. at
¶ 7, Ex. D, Defs.' Dep. Ex. C, Grievance, dated Mar. 26, 2002.

In a prior Motion for Summary Judgment addressing only the issue of exhaustion of

administrative remedies, the Honorable Joseph M. Hood, United States District Judge, sitting by

designation, found that Plaintiff had failed to exhaust his remedies as to his January 18, 2002

grievance, and dismissed this claim with prejudice.  *See* Dkt. No. 43, Order on Summ. J., dated Feb.

14, 2005, at pp. 16-17, n.3; *see also* Munkwitz Affirm., Ex. D, Defs.' Dep. Ex. D, Grievances, dated

Jan. 18, 2002.  The January 18th grievance was filed against Nurse Adams and related solely to

privacy issues concerning the results of an HIV test administered.  Munkwitz Affirm., Exs. D,

Defs.' Dep. Ex. D, Grievances, dated Jan. 18, 2002, & C, Pl.'s Dep., dated July 18, 2005, at p. 25,

lines 6-18, & p. 26, lines 1-17.  Thus, as one of Plaintiff's claims in his Complaint relates to this

incident, it will not be addressed.  Compl. at ¶ 8.  With regard to the March 25, 2002 grievance,

numbered UST-11618-02, Judge Hood found that Plaintiff had submitted letters in an attempt to

exhaust his administrative remedies with the Superintendent and Central Office Review Committee

("CORC").  Order on Summ. J., dated Feb. 14, 2005, at pp. 17-19.  Judge Hood excused Plaintiff's

failure to exhaust his March 25, 2002 grievance, stating that the grievance should have been

addressed, it was questionable as to whether the grievance procedures were "available," and in any

event, there existed "special circumstances" warranting excusal of the exhaustion requirement.  *Id.*;

Defs.' 7.1 Statement at ¶ 27.  In addition, this Court notes that this grievance was not filed against

any particular Defendant.  *See* Munkwitz Affirm., Ex. D, Defs.' Dep. Ex. D, Grievance, dated Mar.

25, 2002; Defs.' 7.1 Statement at ¶ 28.  Judge Hood also found that Plaintiff had submitted letters in

an attempt to exhaust his administrative remedies with the Superintendent and CORC in regards to

the March 30, 2002 grievance and excused Plaintiff's failure to exhaust this grievance based on the

same reasoning as the March 25th grievance.  *See* Order on Summ. J., dated Feb. 14, 2005, at pp.

17-19.

In regards to the March 25, 2002 grievance, numbered UST-11618-02, Judge Hood noted a discrepancy as to the date of the subject grievance in that Plaintiff asserted this grievance was filed on March 26, 2002, while Defendants contended the IGP records reflect a filing date of March 25, 2002. *Id.* at p. 3, note 1. In acknowledging the one-day discrepancy, Judge Hood found it to be of no consequence. *Id.* Although Judge Hood did not discuss the substance of the March 25/26 grievance, we have compared the grievance designated UST-11618-02 submitted to Judge Hood in Defendants' First Motion for Summary Judgment with the March 26th grievance at issue before us. In the grievance numbered UST-11618-02, Plaintiff requested to see a doctor for his medical conditions alleging that he was not seen by a doctor after returning from an outside hospital stay on March 19, 2002. Munkwitz Affirm., Ex. D, Defs.' Dep. Ex. D, Grievance, dated Mar. 25, 2002, & Tousignant Mem., dated Apr. 3, 2002. Now before us is a document submitted by Plaintiff which resembles a grievance dated March 26, 2002. *Id.* at ¶ 7, Ex. D, Defs.' Dep. Ex. C, Grievance, dated Mar. 26, 2002. However, the Court was provided a photocopy of this grievance and it is virtually unreadable. *Id.* The only thing the Court can discern is that it relates to some incident on March 26, 2002, involving Adams and medication. *Id.* Plaintiff acknowledges that this March 26, 2002 grievance was not addressed by Judge Hood in the previous decision and admits that there is no proof to show that this grievance was actually filed with the Inmate Grievance Supervisor. *Id.*, Ex. C, Pl.'s Dep., dated July 18, 2005, at p. 39, lines 1-14. As the issue of the March 26, 2002 grievance has not previously been addressed and is solely related to Adams, the Court will examine whether this remaining grievance has been exhausted.

The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  This exhaustion requirement "applies to all

inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532

(2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

      The New York State Department of Corrections has created a three-step process to exhaust

all administrative remedies available to inmates.  *See Abney v. McGinnis*, 380 F.3d 663, 668 (2d

Cir. 2004)*.*  First, the inmate must file a grievance complaint with the Grievance Clerk within

fourteen (14) days of the incident.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a)(1).  The

complaint is then submitted to the IGRC to review the grievance.  N.Y. COMP. CODES R. & REGS.

tit. 7, § 701.7(a)(2)-(5).  Second, if the inmate appeals the IGRC decision, then the inmate may

appeal to the Superintendent.  *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(b).  Third, if the

inmate appeals the Superintendent's determination, the CORC is to make a final administrative

determination.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(c).  Upon the completion of all three

steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983."  *Colon v. Harvey*, 344 F. Supp. 2d

896, 897 (W.D.N.Y. 2004) (citing *Neal v. Goord* 267 F.3d 116, 122 (2d Cir. 2001) & *Santos v.*

*Hauck*, 242 F. Supp. 2d 257, 259 (W.D.N.Y. 2003)).

      The grievance at issue is not date stamped by the IGP Office nor is there a grievance number

associated with this March 26, 2002 complaint.  *Id.*  If, as it seems, the grievance was not properly

filed and did not go through the administrative grievance process, Adams could not have been put

on notice of the complaint lodged against her.  The Second Circuit has stated that "if prison

regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it

*-12-*

alerts the prison to the nature of the wrong for which redress is sought.  As in a notice pleading

system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.

All the grievance need do is object intelligibly to some asserted shortcoming.'" *Johnson v.*

*Testman,* 380 F.3d 691, 697 (2d Cir. 2004) (quoting and adopting the reasoning in *Strong v. David*,

297 F.3d 646, 650 (7th Cir. 2002)).  Thus, an inmate has to provide sufficient information regarding

a defendant's conduct complained of in order to "allow prison officials to take appropriate

responsive measures."  *Id.*  Under the Department of Correctional Services directives, "in addition

to the grievant's name, department identification number, housing unit, program assignment, etc.,

the grievance must contain a concise, specific description of the problem and the action requested

and indicate what actions the grievant has taken to resolve the complaint, *i.e.,* specific persons/areas

contacted and responses received."  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7(a)(1)(I).

However, if the grievance was not filed and did not go through to the IGRC, Superintendent, or

CORC, Adams would clearly not be on notice.

In addition, the Second Circuit has stated "failure to exhaust administrative remedies is often

a temporary, curable procedural flaw.  If the time permitted for pursuing administrative remedies

has not expired, a prisoner who brings suit without having exhausted these remedies can cure the

defect simply by exhausting them and then reinstituting his suit[.]"  *Berry v. Kerik*, 366 F.3d 85, 87

(citing *Snider v. Melindez*, 199 F.3d 108, 111-112 (2d Cir. 1999)).  In circumstances such as those,

it would be proper to dismiss that particular claim without prejudice.  *Id.* (citing *Neal v. Goord*, 267

F.3d 116, 123 (2d Cir. 2001)).  Nevertheless, where the time for exhaustion has passed, such as here

where the grievance is dated March 26, 2002, and a grievance is to be submitted within fourteen

days of the incident and it is now four years later, dismissal with prejudice may be proper if there

*-13-*

are no special circumstances to excuse the failure.  *Id.* at 87-88.  In this case, Plaintiff filed

grievances on March 25 and 30, 2002, that made it to the IGP Office.  Plaintiff has not provided any

reason why this particular grievance did not make it even to the first step in the process.  Plaintiff

could have filed this grievance on numerous occasions before filing the instant action and there

seem to be no special circumstances justifying excusing exhaustion of this grievance.  In addition,

since nearly four years have passed since the date of the grievance, it would be unlikely that Plaintiff

could even try to exhaust the grievance at Upstate as this grievance would most likely be denied as

untimely.  Moreover, the Supreme Court has held that the PLRA requires proper exhaustion, which

Plaintiff in this case has clearly failed to do.  *See Woodford v. NGO*, 126 S. Ct. 2378 (2006).

Therefore, it is recommended that the Motion for Summary Judgment be **granted** as

dismissal with prejudice would be warranted and Adams be dismissed from the action.

### C.  Eighth Amendment

Bumpus claims that Adams and Walsh violated his Eighth Amendment rights by acting with

deliberate indifference to his medical needs.  Compl. at ¶¶ 28-29; *see infra* note 9.  Plaintiff claims

that Walsh and Adams did not "put [him] down to see the doctor" or medically treat him from

February 4 to 23, 2002, even though Plaintiff submitted sick call requests.  *Id.* at ¶ 9; Dkt. No. 56,

Kelly L. Munkwitz Affirm., Ex. B, Pl.'s Dep., dated July 15, 2005, at p. 25, lines 9-18, p. 30, lines

23-25, & p. 31, lines 1-6.  Additionally, Plaintiff states that Adams did not supply Plaintiff with his

medication on March 26, 2002, and that Walsh failed to provide Plaintiff with his medication on

March 30, 2002.  Compl. at ¶ 28; Munkwitz Affirm., Ex. C, Pl.'s Dep., dated July 18, 2005, at p. 7,

lines 11-21, & p. 16, lines 13-18.[9]

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotation marks and citations omitted) (alteration in original). This standard contains objective and subjective elements. *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance*, 143 F.3d at 702 & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

This deliberate indifference must be in regards to the "prisoner's serious illness or injury[.]" *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Additionally, "'[b]ecause society does not expect that prisoners will have unqualified access to health care,' a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of

---

[9] It should be noted that Plaintiff has essentially failed to exhaust any claim against Adams as the claim set forth in the January 18, 2002 grievance was already dismissed by Judge Hood and the claim set forth in the March 26 grievance is hereby recommended for dismissal. *See supra* Part II.B. As to the issues set forth in the grievances excused and deemed exhausted by Judge Hood, we note that Plaintiff's March 25, 2002 grievance about his sick call requests does not specify a time period for his complaints nor does it grieve against any particular Defendant. Plaintiff also filed a grievance regarding the March 30, 2002 incident with Walsh, which Judge Hood deemed exhausted.

medical care." *Smith*, 316 F.3d at 184 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (further citation omitted).  Some factors that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations omitted) (noting that an inmate is not required to show "that he or she experiences pain that is the limit of human ability to bear, nor [does the court] require a showing that his or her condition will degenerate into a life threatening one").

The prisoner has to show "more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184 (internal quotation marks and citation omitted).  Prison officials act with deliberate indifference "when [they] 'know[] of and disregard[] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837).  The Eighth Amendment deals with "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract[.]" *Smith*, 316 F.3d at 186 (citations omitted).  Moreover, the "severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Id.* at 187 (citation omitted). A prisoner's disagreement with the form of treatment proscribed by medical personnel will not necessary implicate the Eighth Amendment. *Ifill v. Goord*, 2004 WL 1663994, at *3 (W.D.N.Y.

*-16-*

Apr. 8, 2004) (citation omitted).  Furthermore,

> disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment.  Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.

*Id.* (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)).

Notably, when a prisoner, in essence, claims medical malpractice,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omission sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Estelle*, 429 U.S. at 106 & n.14).

If the malpractice involved "culpable recklessness, i.e., an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of harm,'" then it may constitute deliberate indifference.  *Id.* (quoting *Farmer*, 511 U.S. at 839).  Additionally, "[p]rison officials and medical personnel have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons."  *Ifill v. Goord*, 2004 WL 1663994, at *3 (internal quotation marks and citation omitted).

Furthermore, a delay in medical treatment does not necessarily invoke the Eighth Amendment.  The "delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Thomas v. Nassau County Corr. Ctr.*,  288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance,* 143 F.3d at 703).  Although a delay in providing necessary medical care may in some cases constitute deliberate

indifference, such a classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast degenerating condition for three days; or delayed major surgery for over two years." *Freeman v. Stack*, 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000) (internal quotation marks omitted).

Here, Plaintiff must make a threshold showing that he suffers from a serious illness. Plaintiff was diagnosed with moderate gastroesophageal reflux disease and hypertension and has complained of stomach, chest, and kidney pains on countless occasions. Defs.' 7.1 Statement at ¶ 15; *see supra* Part I. Defendants state they do not dispute that Plaintiff suffers from health problems, some of them serious in nature. Def.'s Mem. of Law at p. 11. As Plaintiff has constantly been treated for these ailments and has complained of substantial pain associated with these conditions and as there is no real dispute from Defendants, Plaintiff has made the requisite showing of a serious illness.

However, Plaintiff must now demonstrate that the Defendants acted with deliberate indifference by knowing of and disregarding an excessive risk to Plaintiff's health and that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they did draw the inference. Plaintiff has failed miserably to establish that Walsh and Adams were deliberately indifferent to his medical needs regarding any of the incidents claimed.

As for the allegations that Walsh and Adams did not inform the doctor that Plaintiff wanted to see him, despite Plaintiff's sick call requests, or that they did not medically treat Plaintiff from

*-18-*

February 4 to 23, 2002,[10] Plaintiff's assertions are wholly without merit.  First of all, Plaintiff did

not submit any sick call requests in February 2002.  Defs.' 7.1 Statement at ¶ 9; Munkwitz Affirm.,

Ex. A, Medical Records at pp. 281-316; *see also supra* note 5; Dkt. No. 56, Debra Adams Decl. at

¶¶ 5 & 6;[11] Dkt. No. 56, Susan W. Walsh Aff. at ¶¶ 6 & 7.  In any event, Plaintiff was seen by

doctors at the Alice Hyde Medical Center from February 2nd through the 7th and then was

examined by the facility doctor on February 19, 2002.  Munkwitz Affirm., Ex. A, Medical Records

at pp. 287, 301-04, 306-11, & 316.  Notwithstanding, any disagreements Plaintiff had in regards to

the type of treatment he received does not implicate the Eighth Amendment.  Just because Plaintiff

felt that he should be seen daily by a doctor does not mean that the doctor must acquiesce.  Plaintiff

was properly treated by the medical staff.

Moreover, Plaintiff was also examined and treated by Walsh on February 10, where his

blood pressure was monitored, on February 16, when his blood pressure was checked and his

medication was refilled, on February 22, when Plaintiff complained of a facial rash, and on February

23, when medication refills were ordered.  *Id.*, Ex. A, Medical Records at pp. 281, 285, 287, 289, &

297.  As for Adams, Plaintiff was again examined and/or treated on February 13, when he requested

to see a doctor and Adams told Plaintiff he was scheduled to see the doctor, on February 23, when

medications were given for the facial rash, and on February 25, when medications were refilled.  *Id.*,

Ex. A, Medical Records at pp. 281, 284, 285, & 294.  When Walsh and Adams were not on duty or

available, Plaintiff was seen by other members of the facility medical staff.  Plaintiff was in the care

---

[10] It is unclear whether the Complaint states that he submitted sick calls from February 4th or 9th as the numbers look similar on the Complaint.  Compl. at ¶ 9.  In any event, liberally reading Plaintiff's Complaint, the Court will address the claims beginning on February 4, 2002.

[11] Adams submits her Declaration by the name of Debra Kenny, f.k.a. Adams.  Dkt. No. 56, Debra Adams Decl. However, this Court will refer to this Defendant's Declaration using the last name of Adams.

of doctors and both Defendants during this time period.  The record clearly shows that at no point was Plaintiff denied medical care by the Defendants.  Thus, the Defendants did not know of and disregard an excessive risk to Plaintiff's health.  In fact, Walsh and Adams were well aware of Plaintiff's condition and attempted to take care of him by providing him with regular check-ups and medications.

Plaintiff further claims that Adams refused to provide Plaintiff with his medication on March 26, 2002.  Although Plaintiff saw Adams on that date, there is no evidence to show that Adams deprived Plaintiff of his medication.  Adams Decl. at ¶ 3.  On March 26th, Plaintiff had an appointment with a nephrology specialist.  *Id.*, Ex. A, Medical Records at p. 197.  Afterwards, Plaintiff was seen throwing his medications down the sink and toilet.  *Id.*  At that time, Plaintiff also refused to get his blood pressure taken even though he constantly complained about effects from his hypertension.  *Id.*  Under these circumstances, it was Plaintiff who deprived himself of medical treatment.  There is clearly no substantiation to Plaintiff's claim that he was not provided either proper medical care or his medication and Bumpus cannot show that Adams knew of and disregarded an excessive risk to Plaintiff's health.

Plaintiff suffers the same fate regarding his claim against Nurse Walsh.  Plaintiff states that he was denied his noon medication on March 30th by Walsh.  *Id.*, Ex. B, Pl.'s Dep., dated July 15, 2005, at p. 15, lines 15-22.  That day, Plaintiff refused to take his medications even though Plaintiff's assertion is to the contrary.  Defs.' 7.1 Statement at ¶¶ 21 & 22; Munkwitz Affirm., Exs. A, Medical Records at pp. 190 & 191, & B, Pl.'s Dep., dated July 15, 2005, at p. 15, lines 15-22; Walsh Aff. at ¶ 3.  Walsh filled out the refusal form, though Plaintiff did not sign it, and informed Plaintiff of the dangers of refusing his medication.  Munkwitz Affirm., Ex. A, Medical Records at p.

191; Walsh Aff. at ¶ 3.  This denotes the fact that Walsh did not disregarding any risk to Plaintiff's

health.  Plaintiff also makes the claim that he "never refused any . . . medications."  *Id.*, Ex. B, Pl.'s

Dep., dated July 15, 2005, at p. 16, line 20.  However, Plaintiff's medical records show that he not

only refused his medication on March 30th, but also refused to take his prescriptions on the day

preceding and subsequent to the alleged March 30th deprivation as well as on other numerous

occasions.  *Id.*, Ex. A, Medical Records at pp. 66, 68, 71-73, 76-78, 94, 105, 107-08, 189–91, 200,

238, & 317; Walsh Aff. at ¶ 4.  Even if Plaintiff was denied his noon medication on March 30th,

Plaintiff apparently receives his medication in the morning, at noon, and at night on all other

occasions.  *See generally id.*, Ex. A, Medical Records at pp. 3-354.  Plaintiff does not claim that he

failed to receive his medications on the evening of March 30th.  Thus, a short delay such as that

would not invoke the Eighth Amendment as missing his medication for that time period would not

have any great effect upon Plaintiff, sans his blood pressure rising a bit, as stated by Plaintiff.  *Id.*,

Ex. B, Pl.'s Dep., dated July 15, 2005, at p. 21, lines 15-17.

Therefore, it is recommended that the Motion for Summary Judgment be **granted**.

### D.  28 U.S.C. § 1915

In addition to the recommendation made above, the Court believes that a discussion of

Plaintiff's Complaint under 28 U.S.C. § 1915 is warranted.

A court shall *sua sponte* dismiss a case filed *in forma pauperis* ("IFP") "if at any time the

court determines that . . .  the action or appeal . . .  is frivolous or malicious."  28 U.S.C. §

1915(e)(2)(B)(i); *see also Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir.

1998); *Nance v. Kelly*, 912 F.2d 605 (2d Cir. 1990) (*per curiam*).  The Supreme Court explained

that there are two instances where such a dismissal is warranted.  *Neitzke v. Williams*, 490 U.S. 319,

*-21-*

327 (1989); *see also Welch v. Galie*, 207 F.3d 130, 131 (2d Cir. 2000).  First, when the "factual

contentions are clearly baseless," for example, where the allegations are the product of delusion or

fantasy, dismissal is warranted.  *Neitzke v. Williams*, 490 U.S. at 327-28.  The second instance is

where the claim is "based on an indisputably meritless legal theory."  *Id*. at 327.  "A claim is based

on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law,

*Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curium*), or a dispositive defense clearly

exists on the face of the complaint.  *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995)."  *Livingston v.*

*Adirondack Beverage Co.*, 141 F.3d at 437.

Here, Plaintiff's case is filed *in forma pauperis* and the IFP application was granted.  Dkt.

Nos. 2 & 6.  And as such, the Court can dismiss the case if it is deemed frivolous.  Plaintiff has

clearly failed to raise a cognizable Eighth Amendment claim of deliberate indifference to his

medical needs.  As established above, Plaintiff was seen by medical staff virtually every day and

received adequate care by Nurses Walsh and Adams.  *See supra* Part II.C.  Plaintiff has not put forth

one shred of evidence to give this Court pause that a colorable claim exists under the law.

Moreover, it is precisely this type of case in which dismissal is warranted since it is patently obvious

that Plaintiff's claims are baseless.

Therefore, it is recommended that the Complaint be **dismissed** in its entirety pursuant to 28

U.S.C. § 1915(e).

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 56) be **GRANTED**;

and it is further

*-22-*

**RECOMMENDED**, that the Complaint be **DISMISSED** in its entirety in accordance with 28 U.S.C. § 1915(e) as frivolous; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 5, 2006
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-23-*